**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JORGE ALBERT-DIAZ, | : | CIVIL NO. 1:10-CV-2457 |
| | : | |
| Petitioner, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN WILLIAM SCISM, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In this habeas corpus petition, the Petitioner, Jorge Albert-Diaz invites us to examine the results a prison disciplinary hearing which led to the forfeiture of good time for this federal prisoner. Specifically, Albert-Diaz contends that the hearing lacked appropriate procedural safeguards and reached a result which was unsupported by the evidence. Because we find that Albert-Diaz was afforded a full panoply of procedural protections, and conclude that there is sufficient evidence to support the prison's finding of misconduct, it is recommended that this petition be denied.

### II.    Statement of Facts and of the Case

#### A.    DHO Proceedings

The pertinent facts can be simply stated: The Petitioner, Jorge Albert-Diaz, is a federal prisoner who was convicted in the United States District Court for the

Eastern District of New York of conspiracy to distribute and possession with intent to distribute at least 5 kilograms of cocaine. (Doc. 4, Declaration of Michael S. Romano Ex.1 ¶ 2; Attach. A.) On June 5, 2002, Albert-Diaz was sentenced to 210 months for his role in this large-scale drug trafficking. Albert-Diaz is currently projected for release from custody on September 16, 2017. (Id.)

In August of 2008 Albert-Diaz was housed at the Federal Prison Camp-Schuylkill, Minersville, Pennsylvania. While incarcerated at this facility, on August 15, 2008, Albert-Diaz became involved in an episode which led to the disciplinary citation that is at issue in this habeas corpus petition.

This episode began on the evening of Friday, August 15, 2008, when two correctional officers, Patrick Burns, and Michele Bedford, were conducting random searches in Camp 2 at the Federal Prison Camp-Schuylkill. (Doc. 1, Exs. B and C; Doc. 4, Attach. B.) As Bedford and Burns conducted these inspections, they entered a fire stair well at the camp. (Id.) Inside the fire stair well, Bedford and Burns both detected a strong smell of smoke and ash, and observed a nearby stairwell door, closing, evidence which suggested to them that an inmate had been smoking in the fire stair well and had fled when staff entered the stairwell.(Id.)

Acting on these observations, Bedford and Burns emerged through the stair well door onto the housing range. As they emerged from the stair well, Bedford and Burns saw inmate Albert-Diaz running down the range corridor. (Id.) Burns beckoned to

Albert-Diaz, ordering him to stop in order to allow prison staff to conduct a pat search. (Id.) Albert-Diaz responded to this order defiantly, stating initially that he would not submit to a pat search. (Id.) Presented with this defiance, Burns advised Albert-Diaz that he was conducting a random inspection, and instructed the inmate to stand to one side while staff conducted a search of his cell. (Id.) When that search revealed a bag of foodstuffs in Albert-Diaz's cell, Burns and Bedford confiscated these items, and instructed Albert-Diaz to accompany them to the camp administrative office. (Id.)

Once again, Albert-Diaz's initial response to this staff order was a defiant one, with the inmate stating that he was not going to go to the administrative office since he had done nothing wrong. (Id.) As Albert-Diaz argued with staff, Burns and Bedford observed the Petitioner attempt to pass a black T-Mobile cell phone which he had in his possession to a fellow inmate, Inmate Sims. (Id.) Inmate Sims, in turn, tossed the cell phone into a nearby cubicle, where it was retrieved by staff. (Id.) As correctional officer Burns was recovering the cell phone, he also observed Albert-Diaz tearing up and discarding pieces of paper. (Id.) He recovered the torn sheets, which Burns believed to be gambling slips. (Id.) Albert-Diaz was then detained until additional staff arrived on the scene, at which time the Petitioner was escorted to the administration building. (Id.)

Because Albert-Diaz's conduct implicated a series of prison security concerns, prison official immediately began disciplinary proceedings in connection with this

incident. As part of these proceedings, on August 15, 2008, Diaz received an incident report that charged him with Possession of a Contraband Cell Phone (Code 108); Refusing to Obey an Order (Code 307); and Possession of Gambling Paraphernalia (Code 326). (Id. ¶ 3; Attach. B.) Albert-Diaz received a copy of this incident report within twenty four hours of this incident, on August 16, 2008. (Id., Attach. B.) At the time he received this incident report, Albert-Diaz was also advised of his rights in connection with these proceedings, including his right to remain silent, and his right to present witnesses and evidence relating to these charges. (Id.) When the initial investigative findings sustained the charges in the incident report, this matter was referred to the prison Unit Disciplinary Committee for further proceedings. (Id.)

On August 20, 2010, a Unit Disciplinary Committee (UDC) hearing was held in this matter. At the conclusion of this hearing, which Albert-Diaz attended, it was determined that a referral to the Disciplinary Hearing Officer (DHO) for a final hearing was appropriate. (Id.) The DHO hearing was then conducted on September 15, 2008. (Id., Attach. C. ) At this hearing, Albert-Dia z was advised, once again, of his rights by staff and received a written form acknowledging his rights in connection with this disciplinary hearing. (Id.) Having been advised of these rights, Albert-Diaz waived his right to staff assistance. (Id.)

Albert-Diaz then exercised his right to call witnesses and present evidence, albeit in an equivocal and halting fashion. Thus, Albert-Diaz initially called a fellow

prisoner, Ronald Sims, who was present and was allegedly involved in this cell phone possession incident, as a witness. (<u>Id</u>.) However, "[p]rior to commencing this hearing, DIAZ indicated he wanted to waive his witness." (<u>Id</u>.) Instead, Albert-Diaz's defense to these charges rested on his denial that he had engaged in the conduct observed by two correctional officers, Bedford and Burns, along with a demand that prison officials produce the papers that they claimed were gambling slips. (<u>Id</u>.)

At the conclusion of the hearing, the DHO entered a written report and order in this matter. (<u>Id</u>.; Attach. C.) This report found in favor of Albert-Diaz on one charge, Possession of Gambling Paraphernalia (Code 326) infraction, and ordered this violation expunged from the record. (<u>Id</u>.) Thus, the DHO report was, in this respect, favorable to the Petitioner.

As for the remaining violations, the DHO report found that Albert-Diaz had committed the prohibited conduct of disobeying staff orders and possessing a contraband cell phone. (<u>Id</u>.; Attach. C.) The DHO then imposed the following sanctions upon Albert-Diaz: For the cell phone possession infraction, Albert-Diaz was sanctioned to 60 days of disciplinary segregation, 18 months loss of commissary privileges, 54 days disallowance of good conduct time, 378 days forfeiture of non-vested good conduct time and 5 years loss of phone and visiting privileges. The sanctions for disobeying staff orders, in turn, included 15 days of disciplinary

segregation, 13 days disallowance of good conduct time, 30 days loss of non-vested good conduct time, and 6 months loss of Commissary privileges. (Id.)

## B.    Albert-Diaz's Contentions in This Habeas Petition

Albert-Diaz filed the instant habeas corpus petition on November 29, 2010, (Doc.1), challenging both the prison incident report issued to him and the sanctions subsequently imposed upon him by the DHO. (Id.) In this petition, Albert-Diaz advances both general and specific claims of wrongdoing by prison staff. First, Albert-Diaz alleges, in general terms, that his due process rights were violated during the disciplinary process. (Id.) After asserting these general claims, Albert-Diaz then leveled a more specific charge, contending that the evidence presented in the DHO hearing was insufficient to establish that he possessed the cell phone, gambling paraphernalia, or disobeyed staff orders. (Id.) In this petition Albert-Diaz requests his good conduct time and telephone, visiting, and commissary privileges all be reinstated. (Id.) Albert-Diaz also seeks an unusual form of relief in a habeas corpus petition. He demands monetary sanctions of $50,000 from the United States.(Id.)

This matter has been fully briefed by the parties, (Docs. 1, 4, 8 and 9[1]), and is now ripe for resolution. For the reasons set forth below, it is recommended that this petition be denied.

_____

[1]Indeed, we note that the Petitioner now appears to be represented by two teams of lawyers, each of which has independently filed a traverse on behalf of the Petitioner. (Docs. 8 and 9.)

## III.   Discussion

### A.   Substantive and Procedural Standards Governing Prison Disciplinary Hearings

In this habeas petition Albert-Diaz launches a two-fold constitutional assault upon this prison disciplinary decision, challenging that disciplinary process generally on procedural due process grounds, and asserting that the decision is substantively flawed since there is insufficient evidence to support a finding of misconduct on his part. Albert-Diaz faces an exacting burden of proof in advancing these two constitutional claims.

### 1.   Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v.

Brennan, 855 F.Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the DHO for further hearing. 28 C.F.R. §541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.18. The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.17(b).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary

evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.17(c), the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.17(f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. §541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison

disciplinary setting. See e.g., Fiore v. Lindsay, 336 F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F.App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F.App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

## 2. Substantive Standards Governing DHO Decisions

In his habeas petition, Albert-Diaz also attacks the substance of the DHO decision, arguing that there was insufficient evidence to support a finding of misconduct on his part. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in this disciplinary hearing must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is

11

"some evidence" to support the decision. <u>Hill</u>, 472 U.S. at 457; <u>Elkin v. Fauver</u>, 969 F.2d 48 (3d Cir.1992); <u>Thompson v. Owens</u>, 889 F.2d 500 (3d Cir. 1989); <u>Franco v. Kelly</u>, 854 F.2d 584, 588 (2d Cir. 1988); <u>Freeman v. Rideout</u>, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." <u>Freeman</u>, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

<u>Hill</u> 472 U.S. at 455-456.

Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. <u>Griffin v. Spratt</u>, 969 F.2d 16, 22 (3d Cir. 1992); <u>Thompson</u>, 889 F.2d 501; <u>Freeman</u>, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof. <u>See e.g.</u>, <u>Fiore v. Lindsay</u>, 336

F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); <u>Macia v. Williamson</u>,

219 F.App'x 229 (3d Cir. 2007)(same); <u>Reynolds v. Williamson</u>, 197 F.App'x 196 (3d

Cir. 2006)(same); <u>Levi v. Holt</u>, 193 F.App'x 172 (3d Cir. 2006)(same); <u>Sinde v.</u>

<u>Gerlinski</u>, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

**B.    Albert-Diaz Was Afforded His Procedural Due Process Rights at the DHO Hearing, and the DHO Finding of Misconduct is Supported By Adequate Evidence**

Judged against these standards, Albert-Diaz's procedural and substantive

challenges to this prison disciplinary proceeding simply fail. First, with respect to

Albert-Diaz's procedural due process claims, in this case it is evident that this

prisoner's due process rights were fully vindicated.  Albert-Diaz received advance,

written notice of the proposed disciplinary charges against him. Moreover, he was

notified on multiple occasions of his procedural due process rights, including his right

to have staff assistance and to request witnesses. In this case, Albert-Diaz either

waived or exercised those rights, proceeding without staff assistance and calling but

declining to present witnesses. Albert-Diaz was also notified of his right to be present

at these hearing, and to provide his account of events to the hearing officer, rights that

he freely and consistently exercised. Furthermore, once the hearing was concluded

prison officials scrupulously complied with prison regulations, and afforded Albert-

Diaz his due process rights, by providing him with written decisions outlining the basis of their actions.

As for Albert-Diaz's complaints regarding the fairness of the DHO proceedings, at the outset the Petitioner offers little to support these claims beyond a "generalized critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Moreover, the specific procedural due process claims made by Albert-Diaz's various attorneys do not, individually or collectively, provide grounds for setting aside this disciplinary hearing result.

For example, in his pleadings Albert-Diaz complains that his initial Unit Disciplinary Committee hearing occurred four days after the incident report was issued, rather than the three days typically called for under Bureau of Prisons regulations.(Doc. 8, p.2.) In this regard, Albert-Diaz's argument simply misreads the regulations, and ignores the chronology of these events. While the pertinent regulation, 28 C.F.R. §541.15(b) states that an initial hearing should "ordinarily" occur within three days, the regulation also expressly provides that,"[t]his three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays." 28 C.F.R. § 541.15(b). The date of this event, August 15, 2008, was a Friday, and would be excluded by regulation since it was the

date upon which staff became aware of the infractions. Similarly, under the regulation, the following two weekend days, Saturday, August 16 and, Sunday, August 17, are also excluded. Once these three excludable dates are taken into consideration, this initial hearing was conducted within three working days of the incident, on August 20, 2008. Therefore, this procedural claim is without merit.

Albert-Diaz also complains that he was not allowed to call witnesses, or present evidence, and cites the alleged refusal of prison officials to permit him to call Inmate Sims as a witness, or examine what were alleged to have been gambling slips, as proof that this hearing was procedurally flawed in some fundamental way. (Doc. 8, pp.1-2; Doc. 9, pp.6-7.) These arguments fail for several reasons. First, they misconstrue the nature of the rights afforded inmates in this disciplinary setting. Inmates do not have an untrammeled and absolute right to present any form of evidence they wish to introduce at these proceedings. Rather, "[a] prisoner facing charges that may result in a loss of good-time credits has a due process right to call witnesses at a disciplinary hearing [only] 'when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals' Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Prison officials have broad discretion in administering a disciplinary hearing, see Young v. Kann, 926 F.2d 1396, 1400 (3d Cir.1991), and it is not a denial of due process to deny an inmate an opportunity to present witnesses 'whose testimony would

be irrelevant, repetitive, or unnecessary.' <u>Pannell v. McBride</u>, 306 F.3d 499, 503 (7th Cir.2002); <u>see also</u> 28 C.F.R. § 541.17(c) (providing that 'the DHO need not call repetitive witnesses')." <u>Moles v. Holt</u>, 221 F.App'x. 92, 95 (3d Cir. 2007). Moreover, in this context, an inmate who challenges a prison disciplinary hearing result based upon an alleged denial of his right to present evidence must show some actual prejudice resulting from the prison's exercise of discretion. <u>Pachtinger v. Grondolsky</u>, 340 F.App'x 772, 777 (3d Cir. 2009)(denying habeas petition when inmate failed to show prejudice resulting from absence of cellmate's testimony).

Judged against these standards, Albert-Diaz's specific procedural due process concerns fail to state a claim which would support habeas relief. At the outset, Albert-Diaz has shown no abuse of discretion by prison officials in curtailing his proof. Quite the contrary, the record of the disciplinary proceedings affirmatively shows that prison officials were prepared to entertain testimony from the one witness summoned by Albert-Diaz, inmate Sims, but Albert-Diaz elected not to call that witness. Nor can Albert-Diaz show any prejudice to his case resulting from this exercise of discretion. In particular, Albert-Diaz's claim that he was improperly denied access to the scraps of paper that Officer Burns thought were gambling slips cannot support any finding of prejudice since Albert-Diaz was acquitted of this infraction by the DHO. This

acquittal underscores the procedural fairness of these proceedings, and eliminates any possibility of prejudice resulting from a denial of access to this particular evidence.

Thus, the record of these disciplinary proceedings affirmatively reveals that Albert-Diaz was given all of the procedural protections that due process requires in this setting since he was afforded: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67. Given the full array of procedural rights provided to Albert-Diaz during these proceedings, his procedural due process claim fails. See e.g., Fiore v. Lindsay, 336 F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F.App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F.App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

Nor can Albert-Diaz successfully challenge the substantive outcome of the DHO hearing, since it is apparent that this decision is adequately supported by "some evidence" in the record. With respect to this issue, Albert-Diaz's contentions are little more than an invitation to accept his account of this incident over the statements of the two correctional staff who described his disobedience of staff instructions and his

efforts to surreptitiously dispose of a cell phone which he possessed on August 15, 2008. In such instances, where prison staff personally observed the violations at issue here, and reported that Albert-Diaz both defied their orders, and was observed attempting to discard contraband that he possessed, there plainly was some evidence to support this finding of a rules violation.

Albert-Diaz cannot undermine this finding by claiming that prison officials needed to do more to document his possession of the cell phone. (Doc. 9, pp.2-4.) Indeed, the courts have expressly rejected claims by inmates that more needs to be proven to support a finding of illicit possession of a cell phone by inmates. For example, the United States Court of Appeals for the Third Circuit has recently concluded that an inspection of the contents of a seized contraband cell phone is not constitutionally required in this setting, where an inmate is cited for possession of the cell phone, stating that in such cases:

> [B]ecause [the inmate] was charged only with possession of a [cell phone] SIM card as hazardous contraband, the content of the SIM card was not material evidence, . . . . The Seventh Circuit Court of Appeals has held that the rule of Brady v. Maryland requiring the disclosure of material exculpatory evidence applies to prison disciplinary proceedings. See Chavis v. Rowe, 643 F.2d 1281, 1285-86 (7th Cir.1981). See also Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir.2003) (citing Young v. Kann, 926 F.2d 1396, 1403 (3d Cir.1991) (claim that hearing officer violated inmate's right to due process by refusing to produce letter in which inmate allegedly threatened cell-mate should not have been dismissed as frivolous)). But see Griffin v. Spratt, 969 F.2d 16, 22 (3d

Cir.1992) (limiting due process violation to circumstance where "existing evidence is improperly withheld and hearsay is offered in its place"). But identifying the true owner of the [cell phone] SIM card . . . by verifying the cellular phone number assigned to it and/or revealing the list of calls made and received would not have exonerated [charged inmate] of *possession* of contraband. The contents of the [cell phone] SIM card was not material evidence, and the fact remains that it was found taped to the back of his bottom clothes drawer, and [the inmate] does not dispute that [cell phone] SIM cards are properly prohibited in the prison setting; nor does he dispute the reasonableness of the requirement that inmates keep their assigned area free of contraband.

Donahue v. Grondolsky, No. 10-1147, 2010 WL 3529301, *4 (3d Cir. September 13, 2010)(upholding DHO finding).

Accordingly, on these facts, we conclude that there clearly was some evidence to support this disciplinary finding. Since there is an adequate factual basis for that disciplinary finding, Albert-Diaz's substantive challenge to this disciplinary action should also be rejected. See e.g., Fiore v. Lindsay, 336 F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F.App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F.App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

**C.** **Albert-Diaz is Not Entitled to Recover Damages in This Habeas Petition**

Finally, there is one other aspect of Albert-Diaz's habeas corpus petition that warrants brief comment. In his petition, Albert-Diaz not only seeks reinstatement of his good time, he also demands financial compensation. (Doc. 1) Specifically, Albert-Diaz seeks compensation in this habeas corpus petition in the form of a $50,000 monetary sanction.

Plainly, Albert-Diaz is not entitled to convert a habeas corpus petition into a vehicle for obtaining compensatory damages from prison officials. The writ of habeas corpus, one of the protections of individual liberties enshrined in our Constitution, serves a specific, and well-defined purpose. The writ of habeas corpus exists to allow those in the custody of the state to challenge in court the fact, duration and lawfulness of that custody. As the United States Court of Appeals for the Third Circuit has aptly noted: "The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.' " Powers of Congress and the Court Regarding the Availability and Scope of Review, 114 Harv. L.Rev. 1551, 1553 (2001)." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002). However, there is a

necessary corollary to this principle, one which has long been recognized by the courts; namely, "[i]f a . . . prisoner is seeking [other relief], he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release-the traditional purpose of habeas corpus. In [such cases], habeas corpus is not an appropriate or available federal remedy." Preiser v. Rodriguez, 411 U.S. 475, 494 (1973).

Thus, where a prisoner wishes to constitutionally challenge some aspect of the conditions of his confinement unrelated to the fact or duration of his detention, or seek some form of relief like damages, courts have repeatedly held that the writ of habeas corpus is not the proper vehicle for bringing this type of legal challenge. For example, in Leamer v. Fauver, supra the United States Court of Appeals discussed whether a habeas corpus petition was the appropriate tool for an inmate to use when challenging a prison disciplinary placement decision, like the decision at issue in this case. In terms that are equally applicable here the Court of Appeals held that these type of claims are not cognizable under habeas, stating:

> When read together, there is a logical and coherent progression of Supreme Court jurisprudence clarifying when [habeas and other civil rights relief] is unavailable: whenever the challenge ultimately attacks the "core of habeas" -the validity of the continued conviction or the fact or length of the sentence-a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such

that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [other civil rights statutes] is appropriate.

Leamer, 288 F.3d at 542 .

Following Leamer, courts have often considered invitations by inmates to use the writ of habeas corpus to achieve ends beyond those which the writ is designed to serve. Without exception, these invitations have been declined by the courts as a legal exercise which fall beyond the scope of habeas corpus jurisdiction. See e.g., Dickerson v. Diguglielmo, 306 F. App'x. 707 (3d Cir. 2009); Jupiter v. Warden, U.S.P. Lewisburg, 237 F. App'x. 726 (3d Cir. 2007); Levi v. Holt, 193 F. App'x. 172 (3d Cir. 2006); Beckley v. Miner, 125 F. App'x. 385 (3d. Cir 2005); Woodruff v. Williamson, No. 06-2310, 2009 WL 703200 (M.D. Pa. March 12, 2009)(SMU placement); McKettrick v. Williamson, No. 06-543, 2006 WL 1307929 (M.D. Pa. March 22, 2006)(SMU placement). See, generally, Torres v. Fauver, 292 F.3d 141 (3d. Cir. 2002).

These principles apply here, and compel us to find that Albert-Diaz may not, under the guise of a habeas corpus petition, seek to recover damages from the United States. Thus, entirely aside from the inadequacies of this petition on its merits, Albert-Diaz's prayer for damages must be denied, since the Petitioner is not entitled to this form of relief in a habeas corpus petition.

## IV. Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of January, 2011.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge